# United States Court of Appeals

*for the*

# Third Circuit

Case No. 25-1698

MAURICE BOSTON,

*Appellant,*

– v. –

GRAPHIC PACKAGING INTERNATIONAL, LLC

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA IN CASE NO. 2:22-CV-03473, JOHN R. PADOVA, U.S. DISTRICT JUDGE

## REPLY BRIEF OF PLAINTIFF-APPELLANT

ANDREW LACY, JR., ESQ.
THE LACY EMPLOYMENT LAW FIRM
*Attorney for Plaintiff-Appellant*
3675 Market Street, Suite 200
Philadelphia, PA 19104
(215) 399-9761
andrew.lacy@employment-labor-law.com

**TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES.................................................................iii

INTRODUCTION ........................................................................... 1

ARGUMENT ...................................................................................3

    I.    THE DISTRICT COURT FUNDAMENTALLY ERRED ON THE LEGAL STANDARD ...............................................3

        A.    The District Court Applied Pre-*Muldrow* Law..............3

        B.    Every Action Against Mr. Boston Left Him "Worse Off." ........................................................................ 4

    II.    BOSTON'S PAST DISCRIMINATORY TREATMENT PROVES PRETEXT................................................................ 10

        A.    This Court Must Remand Under *Canada* ................... 10

        B.    The Termination Completed the Discriminatory Pattern................................................................... 11

    III.    GPI'S COMPARATOR DEFENSE FAILS ........................... 12

        A.    No Admissible Evidence of Comparator Races........... 12

        B.    The Only Verified Comparator Shows Discrimination ........................................................ 13

    IV.    THE HOSTILE WORK ENVIRONMENT IS UNDISPUTED .................................................................. 15

        A.    The Facts Are Not Contested ...................................... 15

        B.    GPI Argues for Improper Inferences........................... 16

C.    Supervisor Participation Creates Vicarious Liability ........................................................ 17

V.    GPI DISPUTES INFERENCES, NOT FACTS .................... 18

CONCLUSION ................................................................... 22

COMBINED CERTIFICATION ............................................. 23

## TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Adams v. Austal, U.S.A., LLC,*
754 F.3d 1240 (11th Cir. 2014) ...................................................... 15

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .................................................................... 21

*Burlington Indus. v. Ellerth,*
524 U.S. 742 (1998) .................................................................... 18

*Bush v. Commonwealth Edison Co.,*
990 F.2d 928 (7th Cir. 1993) ........................................................ 14

*Canada v. Samuel Grossi & Sons, Inc.,*
49 F.4th 340 (3d Cir. 2022) ............................................... 1, 10, 11

*Castleberry v. STI Group,*
863 F.3d 259 (3d Cir. 2017) .......................................................... 15

*Christian v. Runyon,*
1998 U.S. Dist. LEXIS 1060, 94 Civ. 5907 (TPG),
1998 U.S. Dist. LEXIS 1060 (S.D.N.Y. Feb. 4, 1998) .................... 17

*Fuentes v. Perskie,*
32 F.3d 759 (3d Cir. 1994) ............................................................ 10

*Harris v. Forklift Sys.,*
510 U.S. 17 (1993) ....................................................................... 15

*Leite v. School District of Philadelphia,*
No. 24-2607, 2025 U.S. App. LEXIS 13449
(3d Cir. June 3, 2025) ........................................................... 8, 9, 10

*McCrorey v. City of Philadelphia,*
    No. 23-2539, 2025 U.S. App. LEXIS 11599
    (3d Cir. May 14, 2025) ............................................................ 6, 7

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ...................................................................... 7

*McDougall v. Rhuling,*
    2024 U.S. Dist. LEXIS 155252 (E.D. Pa. Aug. 28, 2024)............. 7, 8

*Muldrow v. City of St. Louis,*
    601 U.S. 346 (2024) ............................................................ *passim*

*Simpson v. Kay Jewelers, Div. of Sterling, Inc.,*
    142 F.3d 639 (3d Cir. 1998)......................................................... 14

*Small v. Lehman,*
    98 F.3d 762 (3d Cir. 1996)........................................................... 12

## Statutes and Other Authorities:

42 U.S.C. § 1981............................................................................ 17

42 U.S.C. §§ 2000e *et seq.*................................................... 3, 17

Fed. R. Civ. P. 56 .................................................................... 12, 13

**INTRODUCTION**

This case requires remand. An employee may demonstrate pretext via evidence that an employer has previously subjected him to unlawful, discriminatory treatment. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 347 (3d Cir. 2022). The District Court found that Mr. Boston suffered no discrimination because he successfully grieved some discipline. That holding violates *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). Under *Muldrow's* "some harm" standard, Mr. Boston suffered discrimination through unexplained transfers and fabricated writeups. Under *Canada*, this past discrimination proves his termination was pretextual. Remand is mandatory.

GPI's brief ignores *Canada* entirely while asking this Court to adopt the wrong legal standard and draw improper inferences. GPI cannot explain why it transferred its record-setting performer repeatedly without reason. It cannot provide admissible evidence that its comparators were Black. It cannot justify equating racial slurs with parking violations. And it cannot escape that it fired the department's only Black employee while he grieved his murdered brother.

The District Court made three reversible errors. First, it applied a "serious and tangible" standard the Supreme Court rejected. Second, it ignored binding precedent that past discrimination proves pretext. Third, it drew inferences against Mr. Boston at summary judgment. Any one requires reversal. Together, they demand it.

GPI's aggressive brief calling Mr. Boston's arguments meritless and absurd cannot change the facts. A swastika marked the bathroom wall. Supervisors admitted pressure to discipline him. He won grievances proving targeting. White employees received mercy he was denied. These facts require jury evaluation, not dismissal. This Court should reverse.

# ARGUMENT

## I. THE DISTRICT COURT FUNDAMENTALLY ERRED ON THE LEGAL STANDARD

### A. The District Court Applied Pre-*Muldrow* Law.

The District Court committed reversible error by requiring Mr. Boston to show discrimination that was "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." (Appx. Vol. I, 12). This standard comes from pre-*Muldrow* cases the District Court cited, which are cases the Supreme Court explicitly rejected. The Supreme Court held that Title VII requires no "significant," "serious," or "substantial" harm. *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). The plaintiff need only show "some harm respecting an identifiable term or condition of employment." *Id.* at 354.

The District Court compounded this error by holding that successfully grieved discipline cannot constitute harm. The court dismissed Mr. Boston's transfer claim because he "successfully grieved this write up and there is no evidence that he was otherwise disciplined in connection with this or any other transfer." (Appx. Vol. I, 13). This reasoning violates *Muldrow*. Unjustified transfers and unwarranted

discipline cause harm when they occur. The fact that an employee later fights back successfully does not retroactively erase the discrimination.

GPI argues this Court should affirm based on this flawed premise *i.e.*, that discrimination Mr. Boston successfully challenged somehow never happened. (Appellee Br. at 21-23). GPI cannot defend the District Court's application of a heightened standard the Supreme Court rejected.

B.     Every Action Against Mr. Boston Left Him "Worse Off."

Under *Muldrow's* correct standard, Mr. Boston suffered multiple harms. GPI transferred him from equipment he mastered to unfamiliar tasks or machines in different departments. (Appx. Vol. II, 248:19-250: 3, 274:17-22). His production numbers declined. (Appx. Vol. II, 249:3-12). GPI then disciplined him for the predictable performance problems. (Appx. Vol. II, 248:19-250:8).

These transfers left Mr. Boston worse off. They changed what he did (operating unfamiliar equipment), where he worked (different departments), and disrupted the stability necessary for a production-based job. By transferring Mr. Boston to unfamiliar operations, Mr. Boston's productivity numbers suffered.  (Appx. Vol. II, 249:3-12).  GPI then disciplined Mr. Boston for low performance. (Appx. Vol. II, 248:19-

250:8). By stripping Mr. Boston of the ability to perform successfully, it necessarily left Mr. Boston worse off. GPI offers no business justification for repeatedly transferring its record-setting performer. (Appx. Vol. II, 662-664 (showing Boston's production records)). The silence speaks volumes.

Mr. Boston also faced fabricated discipline. Supervisor Matt McMenamin told Mr. Boston that Gary Moore pressured managers to write up Mr. Boston. (Appx. Vol. II, 292:15-293:19; 988). Supervisor Bob Iswalt confirmed he issued writeups at Moore's insistence. (Appx. Vol. II, 293:12-13; 988). Mr. Boston successfully grieved multiple disciplinary actions, proving they lacked merit. (Appx. Vol. II, 241:8-22, 248:19-250:8). Yet GPI argues these writeups caused no harm because Mr. Boston defended himself successfully.

This argument fails. Having to constantly defend against unjustified discipline alters working conditions. It creates stress, consumes time, and signals to the employee that he is unwelcome. Requiring an employee to jump through hoops to keep his job constitutes adverse action, let alone some harm or being left worse off. Forcing Mr. Boston to grieve fabricated discipline repeatedly left him worse off.

GPI also selectively enforced its parking policy against Mr. Boston. He received a two-day suspension for parking violations. (Appx. Vol. II, 667). Yet Boston offers the uncontradicted assertion that other employees parked improperly without facing discipline. (Appx. Vol. II, 644 ¶20). Mr. Boston submitted videos showing cars in handicapped spaces with no visible permits. GPI never explains this disparate enforcement.

Each of these actions – unexplained transfers, fabricated discipline, selective enforcement – constitutes some harm under *Muldrow*. The District Court erred by requiring more. GPI's argument is like insisting someone was not harmed by being falsely arrested because the charges were later dropped. The humiliation, stress, and time spent defending oneself are real harms that cannot be undone retroactively.

GPI perplexingly looks to this Court's recent decision in *McCrorey v. City of Philadelphia*, No. 23-2539, 2025 U.S. App. LEXIS 11599 (3d Cir. May 14, 2025) to support its position that *Muldrow* does not compel reversal in this case.  Exactly the opposite is true.

In *McCrorey*, the plaintiff was transferred to a different division, but "[h]is title, base salary, and job responsibilities did not change." *Id.* at *1.  The District Court dismissed McCrorey's discrimination claim,

finding that he "failed to prove that his transfer to a different NFU division constituted an adverse employment action." *Id.* at *7. But applying *Muldrow*, this Court found that "it is possible the District Court would differently assess the adverse-action element of a prima facie case under *McDonnell Douglas*." *Id.*

Similarly, here, GPI subjected Mr. Boston to repeated transfers to other working areas. These harms were compounded by an employee calling Mr. Boston was called the "n-word," GPI subjecting him to a swastika in the workplace, and supervisors repeatedly subjecting him to frivolous write ups. As this Court remanded *McCrorey* for reconsideration of allegations of discrimination based upon a single transfer, so should it remand this case.

GPI next attempts to bolster its argument with the Eastern Districts ruling in *McDougall v. Rhuling*, 2024 U.S. Dist. LEXIS 155252 (E.D. Pa. Aug. 28, 2024). In that case, the Eastern District found that Ms. McDougall – while *pro se* – alleged that she was referred to as a "dumb blonde" in front of customers and that her computer system was different from that used by males. *Id.* at *21-22. The Eastern District reasoned that the single comment is not an adverse employment action

and that Ms. McDougall failed to provide any context in her pleadings as to how her computer system was different. *Id.,* at \*22-23. As a result, the Eastern District dismissed McDougall's complaint without prejudice to file a second amended complaint. *Id.* at \*26-27.

The case *sub judice* is readily distinguishable. After full development of the record, Mr. Boston has adduced uncontroverted evidence that he was transferred numerous times to different positions with which he had less familiarity, thus impacting his production numbers. Further, he was denied the use of certain equipment, such as a forklift, that would enable him to be maximally productive. Mr. Boston was subjected to the vilest of racial epithets and the sight of a swastika. GPI management on-site failed to treat these issues with the seriousness they merit. Finally, Mr. Boston was subjected to repeated, frivolous write ups, many of which he successfully challenged. Mr. Boston has provided a full context for these repeated, discriminatory actions. Accordingly, this Court should reverse and remand.

GPI relies on one additional post-*Muldrow* case, *Leite v. School District of Philadelphia*, No. 24-2607, 2025 U.S. App. LEXIS 13449 (3d Cir. June 3, 2025). GPI takes considerable liberties with the holding in

8

*Leite*, asserting that the case stands for the proposition that "progressive discipline does not in and of itself constitute an adverse employment action." (Appellee's Brief, p. 22)

This Court's ruling in *Leite* contains no such blanket statement. Rather, it construed a scenario in which Ms. Leite asserted that the District documents from disciplinary proceedings in her personnel file, thereby "interfering with her ability to get a new job." *Id.* at *3. "The District Court observed that, if proven, that allegation would constitute an adverse employment action under *Muldrow* . . ." *Id.*, at *4. Because Ms. Leite failed to provide evidence that any of those documents were accessible to prospective employers or even in her file at all, the Third Circuit determined that Ms. Leite failed to establish harm as a result of their presence in her file. *Id.* *4-5. Additionally, this Court noted that Ms. Leite failed to support her allegation that the disciplinary process itself caused harm because she made only conclusory allegations that she suffered from mental and emotional anguish. *Id.* at *6, n.3. This Court did not announce a rule that the disciplinary process itself cannot constitute "some harm" under *Muldrow*. Rather, the *Leite* ruling stands for the proposition that the disciplinary process itself may constitute

9

"some harm," but that a plaintiff must still identify facts which support the harm.

In the present case, Mr. Boston has adduced evidence not only that he was subjected to discriminatory discipline, but to other forms of discriminatory conduct as well. Mr. Boston has presented evidence that he successfully battled to overturn some of the repeated, unfounded, harassing discipline that was effected not through proper procedure (as was the case in *Leite*), but through threats and coercion directed at supervisors to give negative commentary about Mr. Boston. Accordingly, this Court should remand to the District Court for trial.

## II. BOSTON'S PAST DISCRIMINATORY TREATMENT PROVES PRETEXT

### A.    This Court Must Remand Under *Canada*.

The Third Circuit mandates this analysis: employees may prove pretext "by showing that the employer in the past had subjected [the employee] to unlawful discriminatory treatment." *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 347 (3d Cir. 2022) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). This Court must follow this precedent.

GPI's brief reveals its strategy: avoid *Canada* entirely. GPI analyzes comparators for pages while never addressing the past discrimination in this case that independently proves pretext. (Appellee Br. at 20-23). GPI hopes this Court will overlook binding precedent. The omission is telling. GPI cannot explain why it repeatedly transferred and disciplined its only Black department employee, who set production records. (Appx. Vol. II, 664; 641 ¶2).

Once this Court finds Mr. Boston suffered discrimination through unexplained transfers and fabricated discipline – which it must under *Muldrow* – remand is required. The jury must decide whether the employer who discriminated against Mr. Boston repeatedly discriminated again when terminating him. *Canada* compels this result.

B.   The Termination Completed the Discriminatory Pattern.

The pattern is clear. GPI transferred Mr. Boston without explanation. (Appx. Vol. II, 248:19-249:12). Supervisors told Mr. Boston that they were pressured to write him up. (Appx. Vol. II, 292:15-293:19; 988). He won grievances proving the write ups lacked merit. (Appx. Vol. II, 241:8-22; 248:19-250:8). GPI suspended him for parking while others parked freely. (Appx. Vol. II, 667; 644 ¶20).

11

The termination's timing reveals everything. Mr. Boston's brother was murdered. (Appx. Vol. II, 644 ¶24). While Mr. Boston grieved, GPI calculated attendance points. HR Coordinator Bender admitted discomfort—"I do not like that all of this is coming about with the death of his brother"—but proceeded anyway, noting that "in the past, he enjoyed filing grievances." (Appx. Vol. II, 650, 653).

This was not about attendance. It was the culmination of systematic discrimination against the department's only Black employee. (Appx. Vol. II, 641, ¶2) ). When transfers and fabricated discipline failed to break him, GPI shifted tactics. When tragedy struck, GPI struck too. A reasonable jury could find this final act flowed from the same discriminatory animus that drove the earlier harassment. *Canada* requires remand for that determination.

## III.   GPI'S COMPARATOR DEFENSE FAILS

### A.   No Admissible Evidence of Comparator Races.

GPI claims multiple African-American employees received leniency on attendance. The problem: GPI never provided admissible evidence of these employees' races. Unverified interrogatory responses violate Rule 56. *Small v. Lehman*, 98 F.3d 762, 765 n.5 (3d Cir. 1996) (unsworn

statements fail Rule 56 requirements). GPI needed declarations or deposition testimony establishing comparator races. It provided neither.

GPI's brief cites only to Mr. Boston's own statement of comparator races and its own unsworn assertion about Hamilton. (Appellee Br. at 22-23). GPI never addressed Mr. Boston's evidentiary objection. This silence is fatal. Without admissible evidence, GPI cannot establish its comparators' races at summary judgment.

B. The Only Verified Comparator Shows Discrimination.

The only comparator whose treatment is properly in the record is Michael Antenucci (white, given multiple chances despite exceeding nine attendance points). (Appx. Vol. II, 657-658). GPI terminated Mr. Boston at 10.5 points while Mr. Boston was grieving his murdered brother. (Appx. Vol. II, 644 ¶24). The disparate treatment is clear.

Even accepting GPI's inadmissible evidence, Antenucci remains the most relevant comparator. Both men exceeded nine points. Both were handled by the same HR personnel. Only one received mercy. GPI cannot defeat summary judgment by pairing Mr. Boston with less similarly-situated employees of any race. The Seventh Circuit recognizes this tactic: "a company cannot insulate itself from a finding of racial

discrimination by pairing the firing of a black man with the firing of a white one, or by pointing to a token black whom it treated with abnormal leniency." *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 931 (7th Cir. 1993).[1] Hamilton had different supervisors who submitted notes of positive feedback for Hamilton. (Appx. Vol. II, 725). Mr. Boston's supervisor, Moore, forced others to discipline him. (Appx. Vol. II, 292:15-293:19; 988). These are not comparable situations.

---

[1] Cited with approval by *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 646 (3d Cir. 1998).

## IV.    THE HOSTILE WORK ENVIRONMENT IS UNDISPUTED

### A.    The Facts Are Not Contested.

GPI does not dispute the key facts. A swastika was carved into the bathroom wall. (Appx. Vol. II, 643 ¶15). William Dennis called Mr. Boston the N-word. (Appx. Vol. II, 655). No Black employees held supervisory positions at this "very diverse" plant. (Appx. Vol. II, 67:17-70:25). When shown the swastika photograph, HR Manager Morrison would not acknowledge it was racist. (Appx. Vol. II, 80:02-22).

These facts establish severity under binding precedent. The Third Circuit holds that a single use of the N-word can create a hostile environment. *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017). The Eleventh Circuit recognizes that a racially offensive carving on a workplace wall can be severe enough to establish hostile environment. *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1254 (11th Cir. 2014).[2] The combination – N-word plus swastika – exceeds the severity threshold.

GPI argues these incidents should be viewed separately. But hostile environment claims require examining "all the circumstances." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). Mr. Boston, the only Black employee

---

[2] Cited with approval by *Castleberry*, 863 F.3d at 265.

in his department, faced racial slurs, worked beneath a swastika, and experienced systematic targeting from supervisors. The totality altered his working conditions.

B.    GPI Argues for Improper Inferences.

GPI's defense relies on drawing inferences against Mr. Boston at summary judgment. GPI argues no one reported the swastika, so it must not have bothered anyone. (Appellee Br. at 19). But unreported discrimination often signals futility, not acceptance.[3] Mr. Boston testified he did not report it because earlier complaints went nowhere. (Appx. Vol. II, 643 ¶15). At summary judgment, this Court must infer the swastika created a hostile environment, not that employees accepted it.

GPI also emphasizes that Dennis was ultimately fired. But Morrison – who is Black – initially recommended only a two-day suspension for using the N-word, the same punishment Mr. Boston received for parking violations. (Appx. Vol. II, 644 ¶21). Morrison was the decision-maker on the ground. Corporate leadership in Atlanta had to

---

[3] GPI argues the swastika is irrelevant because unreported. But unreported discrimination signals futility, not acceptance. Mr. Boston testified Morrison told him to document everything and nothing else when he complained about harassment. (Appx. Vol. II, 641 ¶4). GPI's argument punishes employees for the broken reporting system it created.

overrule him to terminate Dennis. (Appx. Vol. II, 115:10-16). Had Morrison's recommendation stood, Dennis would still be working there. Morrison described himself as career-driven throughout his deposition. (Appx. Vol. II, 40:1-54:4)). His actions speak louder than words; equating racial slurs with parking violations, refusing to recognize a swastika as inherently racist, and telling Mr. Boston to document everything and doing nothing else when Mr. Boston reported harassment. (Appx. Vol. II, 641 ¶4; 80:02-22). Whether Morrison acted from bias or self-preservation, the result was the same: discrimination went unchecked.[4] A jury must evaluate these motivations.

GPI took no action regarding the swastika. Management walked past it daily. Even after learning about it in discovery, GPI left it there. This complete failure to remediate breaks any defense.

C.     Supervisor Participation Creates Vicarious Liability.

GPI glosses over a crucial fact: Mr. Boston's supervisors participated in the harassment. Supervisor Gary Moore repeatedly

---

[4] A Black supervisor can discriminate against Black employees. *Christian v. Runyon*, 1998 U.S. Dist. LEXIS 1060, 94 Civ. 5907 (TPG), 1998 U.S. Dist. LEXIS 1060, at *11 (S.D.N.Y. Feb. 4, 1998). Same-race discrimination claims are cognizable under Title VII and Section 1981.

transferred Mr. Boston without explanation and pressured others to discipline him. (Appx. Vol. II, 292:15-293:19; 988). Moore cursed at Mr. Boston, asking if he would "finish this fucking job or keep dicking around." (Appx. Vol. II, 242:18-245:05). Moore denied Mr. Boston the use of a forklift despite the fact that Mr. Boston was certified operator and no other employees were denied forklift use.. (Appx. Vol. II, 407:14-409:7).

When supervisors create hostile environments, employers face vicarious liability. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998). GPI cannot invoke the Ellerth defense when its supervisors were the harassers. The combination of supervisor harassment, racial slurs, and unremediated hate symbols created an environment that would detrimentally affect any reasonable person in Mr. Boston's position. Reversal is required.

## V.    GPI DISPUTES INFERENCES, NOT FACTS.

GPI accuses Mr. Boston of "mischaracterizing" the record. But examining their claims reveals GPI wants this Court to adopt employer-friendly inferences at summary judgment, which is backwards.

What GPI calls mischaracterizations are actually disputed inferences:

- **Dennis's punishment**: GPI says we mischaracterized by noting Morrison initially recommended two-day suspension.

  - **Fact**: Morrison recommended suspension. (Appx. Vol. II, 115:1-9)

  - **Also fact**: Corporate overruled and fired Dennis. (Appx. Vol. II, 115: 10-16; 646)

  - **Proper inference**: Initial response reveals workplace tolerance for racial slurs

- **Disciplinary tracks**: GPI says Mr. Boston wrongly claimed that attendance was not grievable.

  - **Fact**: Resolution of Antenucci's attendance infractions by agreement with the union suggests that attendance issues were subject to grievance procedures. (Appx. Vol. II, 657) The attendance policy does not exclude attendance violations from the grievance provisions of the CBA. (Appx. Vol. II, 798-802) The CBA does not exempt attendance violations from the

CBA's discipline and grievance provisions. (Appx. Vol. II, 821-824)

- ○ **Also fact**: Performance write-ups were easier to overturn—Boston won multiple. (Appx. Vol. II, 241:8-22)

- ○ **Proper inference**: GPI shifted tactics to harder-to-challenge violations

- **Morrison's role**: GPI emphasizes Morrison is Black.

  - ○ **Fact**: Morrison is Black. (Appx. Vol. II, 357:7-9)

  - ○ **Also fact**: Morrison would not call swastika racist. (Appx. Vol. II, 80:02-22)[5]

  - ○ **Proper inference**: Morrison's race doesn't excuse his tolerance of discrimination

- **Fabricated discipline**: GPI says discipline was real, just minor.

  - ○ **Fact**: Boston called them "small things." (Appx. Vol. II, 292:21-23)

---

[5] GPI repeatedly emphasizes Morrison is Black, as if this immunizes the company from liability. But Morrison's race does not excuse his refusal to call a swastika racist (Appx. Vol. II, 80:02-22), his directive to Boston to stop reporting harassment (Appx. Vol. II, 641 ¶4), or his initial recommendation that using the N-word warrants the same punishment as a parking violation (Appx. Vol. II, 644 ¶21)

○ **Also fact**: Supervisors indicated pressure to write Boston up. (Appx. Vol. II, 292:15-293:19; 988)

○ **Proper inference**: Minor infractions inflated to discipline equals fabrication.

**The undisputed facts GPI cannot deny:**

- Only Black employee in department (Appx. Vol. II, 641 ¶2);

- Swastika on bathroom wall (Appx. Vol. II, 643 ¶15);

- N-word used about Boston (Appx. Vol. II, 655);

- Transferred repeatedly—no reason given (Appx. Vol. II, 248:19-250:8, 274:17-22) ;

- Won multiple grievances (Appx. Vol. II, 241:8-22); and

- Terminated during brother's murder (Appx. Vol. II, 644 ¶24).

GPI's strategy is transparent: label legitimate inferences as mischaracterizations while asking this Court to infer that discrimination never happened. But at summary judgment, all justifiable inferences go to Mr. Boston. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When the only Black employee faces unexplained transfers, reversed discipline, and termination during tragedy while White employees receive mercy, a jury – not GPI's lawyers – decides what that means.

21

## CONCLUSION

Mr. Boston was the only Black employee in his department. GPI transferred him repeatedly without explanation, disciplined him for fabricated infractions, and terminated him while he grieved his murdered brother. The District Court dismissed these claims by applying the wrong legal standard and drawing inferences against Mr. Boston at summary judgment.

This Court should reverse. Under *Muldrow's* proper "some harm" standard, Mr. Boston suffered multiple discriminatory acts. The swastika remains on GPI's bathroom wall. Mr. Boston's production records remain unbroken. The question remains for a jury: why did GPI destroy the career of its top performer? The answer requires trial, not summary judgment. This Court should reverse and remand.

Dated: October 15, 2025    *s/ Andrew Lacy, Jr.*
Andrew Lacy, Jr., Esq., PA
THE LACY EMPLOYMENT LAW FIRM
3675 Market Street, Suite 200
Philadelphia, PA 19104
(215) 399-9761
andrew.lacy@employment-labor-law.com

*Counsel for Appellant*

22

## **COMBINED CERTIFICATION**

I HEREBY CERTIFY as follows:

1.      I am a member in good standing of the bar of the Third Circuit and the Supreme Court of the Commonwealth of Pennsylvania.

2.      I have this 15th day of October 2025 served a true and correct copy of this Reply Brief via the Third Circuit electronic filing system upon the following:

> Barbara Rittinger Rigo, Esquire
> Kevin B. Frankel, Esquire
> Littler Mendelson
> 1601 Cherry St., Suite 1400
> Philadelphia, PA 19102
> Counsel for Appellees.

3.      The hard copy briefs submitted to the clerk are identical to this brief.

4.      This brief contains 3,681 words using a proportional font.

5.      A virus scan was performed on this brief using Avast One, Version 25.3.0, and no virus was detected.

> *s/ Andrew Lacy, Jr.*
> Andrew Lacy, Jr., PA Bar No. 321232
> *Counsel for Appellant*